Good morning, Your Honors. May it please the Court, my name is Melissa Ingalls and I'm here on behalf of Directv. This appeal presents the following issue. Is it okay for a Montana consumer who enters into a contract in his home state of Montana and engages in transactions related to that contract in Montana to agree that his home state laws of Montana would govern that contract and any disputes that came up about it? Similarly, is it okay for a Georgia consumer to do the same? Well, when you say agree, there was no negotiation here. This is a standardized contract, that is true, but in this appeal there is no dispute that in fact there is a contract between the parties. The Georgia consumer, similar to the Montana consumer, became a Directv customer, agreed to the Directv Become a customer, signed a contract that had this provision. Correct, correct. And both of these customers, just to give some more background, entered into their agreements with Directv quite some time ago. Actually, Mr. Murphy in Georgia became a Directv customer back in 1997, and Mr. Masters, the Montana customer, has been a Directv customer since the late 90s and had his Directv agreement with the arbitration provision in it as of October 2004. This is what the parties agreed to here, that the consumer's home state laws would apply to their respective contracts and to their Directv services. And that makes sense. Directv is a business that engages in transactions with customers all across the nation and agrees with each of its customers that that customer's home state law would apply to its relationship with Directv. And in fact, I believe that that's what the plaintiff's bar has actually been arguing for for several years, to make sure that a consumer residing in whatever their home state is would be able to have their home state laws apply to their relationship with a company. I was going to say maybe these plaintiffs disagreed with the plaintiff's bar. In fact, I know that. Obviously, they do. I know that fact is not the case because I know that these plaintiff's lawyers that are involved here have on several occasions actually been arguing against choice of law provisions that select a company's home state laws to apply and have argued for the consumer's home state law to apply. So California says, okay, we respect that in a contract, with an exception under the restatement. And one of the elements is a fundamental policy. Yes. And here they said, well, there's a lot of strong language, I think, in California cases saying that there's a fundamental policy against class action waivers. Now, I know you tried to reformulate that as saying, well, but they never said fundamental policy against class action waivers, but only as to California residents. And so I was looking for a case that even addressed that issue, and all I saw was a lot of very strong California language that we just don't enforce them here. We don't enforce them. It's a fundamental policy. Okay. I actually think that there are cases that show that the California policy against class action waivers is for the purpose of protecting Californians and not protecting residents outside California. Excuse me. I'm sorry. But does any case ‑‑ because I looked at your briefs on that. I read those cases. And what I didn't see was any case that addressed that issue or that issue was raised. Is there a case where that question was actually raised? I do not believe that there's actually been a case in California where a non‑California resident has come into California and tried to invoke California's policy against class action waivers. I have not seen that. But I do think that if you look at the AOL Mendoza case, you know, the one from 2001, as well as what the Ninth Circuit looked at when it looked back at that case as well as Discover Bank and looked at the California policy when it was looking at the Doe 1 v. AOL case from earlier this year, each of these cases describes the California public policy this way. And I'm referring now to the Doe 1 v. AOL case from the Ninth Circuit. The judges there said, quote, as to such California resident plaintiffs, Mendoza holds California public policy is violated by forcing such plaintiffs to waive their rights to a class action and remedies under California consumer law. And Judge Bee and his concurrence agreed, quote, California has a public policy against the waiver of a class action procedural mechanism by California consumers. Now, what is your class? The plaintiffs in this case have asserted a nationwide class action. Each of them, they have separate complaints. The Klussman case from 2005, which is a California... Presumably would include a lot of California residents. Presumably if they were to do that. And one of the things I think might be important to mention at this stage is that there is currently a class action pending in California, in the Central District of California, by these same plaintiff's lawyers on behalf of a California plaintiff asserting a California putative class for transactions that occurred with DirecTV in California and asserting California statutory claims. And what these plaintiffs are basically seeking by their, you know, with the ruling by trying to get the district court affirmed is to undermine what the California Supreme Court said in Washington Mutual. These plaintiffs want to be part of that California-based class action or pursue their own nationwide class action in California and they want the choice of law provision that should be presumed to be valid to be invalidated so that they can do that. And what the California Supreme Court said in Washington Mutual was that an otherwise enforceable choice of law agreement may not be disregarded merely because it may hinder the prosecution of a multi-state or nationwide class action or result in the exclusion of non-resident consumers from a California-based class action. Discover Bank, the California Supreme Court, when it was looking at the class action waiver in the context of an arbitration agreement, looked at Washington Mutual. And it, too, distinguished the idea of invalidating a class action waiver and forcing a company to structure their contracts with customers to force them to be in a nationwide class action. The Discover Bank court did that. The perspective of that really helps us here. I mean, I've got this case, Cohen v. DirecTV, looking at this very waiver and saying, because DirecTV's prohibition on class claims and arbitration effectively operates to insulate DirecTV from liability for its conduct, the class action waiver is unconscionable and unenforceable. So how do I, sitting in diversity, looking at California law, how do I get around that language? Cohen v. DirecTV, which I was actually involved in, involved a California resident plaintiff. That's what the main difference is. And California law applies to the relationships between California resident plaintiffs and DirecTV. And Discover Bank, and again, that's what the Cohen case was relying on, Discover Bank, the California Supreme Court's concern with class action waivers as it applied to California residents, they were concerned that companies could use class action waivers to insulate themselves from liability under California law. And here, we know that DirecTV can never do that. And I already mentioned that DirecTV is already defending itself in a California-based class action with a California plaintiff, asserting those California law claims for activities that occurred in California. Well, has the class been certified? No, not yet. The case is proceeding. It's not stayed, but we're in the process of discovery. So how about Discover Bank 2, where even though it was a California resident, they looked at the fact that it was Delaware law claims on behalf of a nationwide class against a bank domiciled in Delaware and said, okay, it's Delaware law notwithstanding. Here, we've got Masters as a Montana resident, but it's asserting California law claims, nothing under Montana law and against a company domiciled in California. So it seems like the reciprocal, sort of the mirror image, that the California court would say, okay, well, that's the same rule we apply in Discover Bank 2. Well, Discover Bank 2, you're referring to the materially greater interest test that the Court of Appeal applied there. And I think principally, first and foremost, we have to remember that there was a California plaintiff. All of the cases that have invoked California's materially greater interest, the Klussman case, the cases out of this court, I know Davis v. Chase Bank was a case that you were involved in, Judge Ikuda, the Hoffman case, the Oestreicher case, when California's materially greater interest was invoked, you had a California plaintiff asserting claims on behalf of a California class for transactions and contracts that occurred in California, and they were forthly asserting California-based consumer claims. In Discover Bank on appeal, you started with the first part, so you had a California plaintiff seeking to invoke that protection, but where it fell apart was the California plaintiff was now asserting a claim on behalf of a nationwide class. Just like here. And, in fact, true. You had a California plaintiff at least, a California plaintiff at least. And they said, notwithstanding that, we'll apply Montana law here, I mean Delaware law here. It seems like Masters is similarly situated, and by the same token they'd say, okay, California law applies. Except they're not California residents. They don't even meet the very first threshold is what I would say. So when you take those four factors, you took away two of them, and in Discover Bank they said, we don't even care that you're a California resident. We're not going to let you invoke, as a California resident, the protections of the California policy against class action waivers. Here they're taking away the first three, no California resident, no California class, no transactions or anything alleged to occur in California. They want to insert a Montana resident on behalf of a nationwide class for transactions, contracts, conduct that occurred in Montana, and then they want to slap on some California consumer claims and let that be the determining factor to say, by virtue of that, I get to invoke California's policy against class action waivers. Does it matter that it's bringing only California claims against a defendant in California, which was analogous to Discover Bank II? It was only Delaware claims against a defendant in Delaware. Does that make a difference? I don't believe it does. I guess I'm not saying that I think it's necessarily analogous because of the fact that there is not a California plaintiff, which I think is the threshold that has to at least be met. And the difference is, is that when you ---- As a California, has the Court said that? I believe if you read the cases that that's what they say. Even the Ninth Circuit said in Doe v. AOL that this is a policy that applies to California residents. I believe that would be the very initial thing that would have to be ---- that would have to exist in order to invoke this public policy. And to give ---- there's two things, I guess. To have the fundamental policy and to invoke California's materially greater interest. Because in most of the cases that you look at, when they have these, they look at the location of the plaintiff, what's the class that they're representing, where did the transactions occur, where did the injury occur, and then what kind of claims they're bringing. When the Klussman case, also the Ninth Circuit in Davis and in Oestreicher, when all those cases looked at the state of the company, the home state of the company, they decided that the company's home state, whether it was Delaware or Florida or wherever, their interest was limited into regulating the business practices of companies incorporated under its law. And that's exactly what I say California's interest is here. California has an interest in regulating the conduct of its businesses incorporated under its home state laws, but Montana has a Montana resident engaged in transactions and contracts in Montana, complaining about something that happened in Montana, asserting a class of nationwide consumers, and just happened to have lawyers that would allege the letters CLRA and UCL on their complaint. One last point since we're on this idea of does just asserting CLRA and UCL, is that enough to invoke California's materially greater interest? The reason that that would never make sense, and I don't know that this has been explained to the court quite yet in the briefs, is that this choice of law provision and the arbitration provision at issue has been looked at by several federal district courts around the country, including Ohio, Louisiana, Illinois, Washington, D.C., and each time you had a district judge looking at what were the policies of the consumer's home state laws in that state, and each time the judge said our policies under Ohio law, for example, are that individual arbitration provisions are enforceable. And if we decided, or if the court decided, excuse me, if the court decided that just by slapping a UCL and a CLRA claim on an out-of-state consumer's complaint, like the one in Ohio, and finding somebody who would turn around and file it here in California federal court, that would just basically undo Judge Oliver's 27-page opinion that he issued in July, which found that the arbitration provision under Ohio law for an Ohio consumer is a valid and enforceable way for a consumer in Ohio to address their dispute with DIRECTV. I also think, to the extent that the court has not had a chance to take a look at it, that the court should look at Judge Guilford's opinion that he just issued in September of 2009, basically the exact same issues here, looked at the materially greater interest test. He has a personal interest in the test because he dealt with the Hoffman opinion that remanded back to him the issue to be decided. You've just about used your time. I'll reserve for rebuttal. You've got five seconds. Okay, thanks. Thank you. Paul Bland, representing the plaintiff and the appellee in this case. The court is totally right to focus on that this is an issue of California law and what would the California Supreme Court say. There is no case yet dealing with a challenge to a choice of law clause where the defendant is based in California and where the acts of allegedly violating the consumer protection laws and cheating people in other parts of the country are based in California, and then the choice of law clause would choose another state's law with the goal of being exculpatory, of making the cheating possible. Now, while there is no case right on point, the case that is closest by far, there's no case anywhere near as close from the California Supreme Court to this issue is the Diamond Multimedia case, and it's a case involving a challenge to one of the California securities statutes. The claim was market manipulation, and what the defendant said was, well, California has no reason why you would apply your securities laws to people in other parts of the country. You have all these people from other states. Why does California care about those people? You have no purpose there at all. And the California Supreme Court said, and I quote, that California has a clear and substantial interest in preventing fraudulent practices in this state, which have an effect both in California and throughout the country. Clear and substantial. Then just a little bit further into the same opinion, the California Supreme Court said, California has a legitimate and compelling, compelling interest in preserving a business climate free of fraud and deceptive practices. The idea, now we're importing this idea from other areas, but the question of, under the statement section 187, there's two parts. The first is, does California have a fundamental policy? And the second is, what are the comparative interests of the two states? Well, the California Supreme Court, in analogous situations, has said that California does not want to be a state where California companies are cheating people in other states. It hurts the state's image. It hurts its business climate. People are less likely to rely upon California businesses. So in another setting, the California Supreme Court says that California has a substantial interest, a substantial interest in applying California law to the claims of other people when the company doing the cheating is based in California and the cheating is based in California. And it says that that interest is compelling. Now, is a compelling interest the same as a fundamental policy? It's not the exact same nomenclature, but it's close. It's the closest you're going to see. It is from a different setting. I acknowledge that. I acknowledge the case is not Bain on point. This is a question of first impression. What would the California Supreme Court do with a choice of law provision that is basically a get-out-of-jail-free provision for cheating people in other parts of the country when the company is based in California? Because that's what Discover Bank says. Discover Bank says that the reason these provisions are unconscionable, and Your Honor listed several of the other cases, Cohen v. DirecTV and Klusman and so forth, the reason that these provisions are unconscionable, that ban class actions, is because they act as an exculpatory clause. California law recognizes that people are simply not going to go forward on claims between $50 and $450 on an individual basis, that the vast majority of people won't. And, in fact, in the DirecTV case, excuse me, the Diamond Multimedia case, in the Diamond Multimedia case, the court went on and said that one of the points, one of the reasons that we have this law, which is aimed at protecting against market manipulation, is because we wanted to deter this misbehavior. We wanted to deter companies from cheating people this way. And if what happens is that our law only stops the cheating for California but doesn't for the rest of the country, that the deterrent effect will be enormously reduced. And that's what's talked about in the Discover Bank case, the first case, the case by the California Supreme Court, was that if you were to apply Delaware law, which at that point was argued to allow a class action ban to go forward to California citizens, at least, that that would have the effect of being an exculpatory clause. Now, what happened in Discover Bank Part 2 was they were alleging claims under Delaware laws, not California laws. And that made the case different. That was the reason why California law didn't apply. Also, Discover Bank was not based in California. California is not trying to rule the world. If there's a dispute between a company in Texas and an individual in Florida or Georgia or whatever, the California courts have no interest in applying their law. Well, the limiting principles here are what? The limiting principles are that the defendant was based in California and that the bad acts occurred and went out from California and that the plaintiffs are alleging claims solely under California law, and then that the choice of law clause would effectively render California law, would gut the deterrent effect of California law. That if you applied the laws of states that would enforce the class action ban, California law would see that what that would do the deterrent to force of California law. Direct TV says that the plaintiff here signed the contract and said Montana law would apply, and what's wrong with that? What's wrong with that is that people sign contracts all the time that courts then do not enforce. I mean, the California case of striking down class action bans, every single one of those people signed and agreed to a class action ban. Well, then you must, your argument must, a limiting principle must be that this is a contract of adhesion. Yes, that's absolutely right. And that's accepted here. I mean, it's a contract that's drafted by Direct TV and when the person buys the equipment it's a form agreement. There isn't a negotiation. There isn't anything signed. You don't have any choice. There's no choice. You either sign it or don't get it. I mean, you have a choice of not getting the product, but it's a take-it-or-leave-it contract. That's right. And there's no dispute about that here. And but people did agree to this, but choice of law provisions are struck down. Not, I mean, there are choice of law provisions in contracts that people agree to that are struck down if they violate a fundamental policy of the State. And here you have California Supreme Court saying we have a compelling interest and then also if California has a greater interest. That's judged by California. I'm sorry. Did the district court consider this, the contract of adhesion argument? Yes. I think that's one of the findings of district court opinions, that it's a take-it-or-leave-it contract and that it falls within Discover Bank. In fact, DirecTV conceded that this contract would be unconscionable as applied to California residents. And the fact, the requirement that it be a contract of adhesion is an element of the Discover Bank test. So it's not, there's no question here. There's no, the people aren't going into Best Buy and separately writing out on a handkerchief, you know, here's going to be the deal. They have a form agreement that you take. If I could move to the second part of the test about comparing the governmental interests. Again, now we're looking at this from the prism of California law. What does California law think about the interests of other states with respect to their citizens? Well, here what California law would say, and it said this in the clothes rigger case and then we also cited to the Ninth Circuit's decision in an employment case very recently, where what California law would say is there's no state that has an interest in having its consumers cheated by a California business. So if another state would have weaker consumer protection laws that would give their customers weaker protections than California's consumer protections laws would, then that state, we don't consider that state to have a legitimate interest. Now, it's okay, if Texas wants to ban class actions or state class action bans are okay with respect to Texas customers, California's not going to get involved. If a Texas company wants to have a class action ban with respect to a person in Florida, California's not going to get involved. But the California Supreme Court does say it has a compelling interest in not having a California company cheat someone in another state because it's bad for California, and California thinks that that state has no legitimate interest in seeing its consumers get cheated. What do you do with the law that, in other contexts at least, says that the interest of the state in which a company is incorporated has to do with whether or not the company complies with its laws of incorporation and its reporting requirements and all that sort of thing, but doesn't go to essentially its areas like this that have to do with protecting those with whom it deals outside of the state? With respect, I think that we've cited in our brief a series of cases, not just the Clothes Rigger case and not just the Diamond Multimedia case, but there are a series of other cases applying California law. There's the Pizza Time Theaters case, and I think we have five or six cases in a row where courts have found that California does have an interest in keeping its companies, its businesses, from cheating people in other states. That's been a principle that's been applied in a lot of other contexts. Now, I admit that none of them are choice of law contracts. So the question is, are you going to take this deeply embedded, longstanding California law from other contexts and apply it to a choice of law provision? And I think that that is a question of first impression, but there's no case in which any California court said, you know, we don't care if California companies cheat people in other parts of the country. All they have to do is file their articles of incorporation on time and have a registered agent. Yeah, but this is a little bit different because presumably the state of Wisconsin or Montana or those states have some interest in their protection of their residents who are dealing with other companies. And if they say, we think that those, that we should uphold the choice of law provision that they, that they contract with, aren't we kind of ignoring their interest? With all respect, Your Honor, I don't agree. I understand that. Under the Claxton case, well, let me say this. Under the Claxton case and under the Hoffman case, you look at the law of the forum state in a diversity case such as this. So you're looking at California law. How does California law evaluate the choices of those other states? First of all, if there was, if it was proven that another state had consumer protection, had better law with respect to banning class actions in California, but there can't be. There's not going to be. As long as California law has Discover Bank, which strikes down these class action bans as unconscionable, there isn't going to be any state that's better. And California law says as long as other states have the same law, that that's all right. There's no other state that's going to be less, that's going to be stricter on striking down exculpatory clauses. I mean, I've won the cases in Washington and New Mexico and New Jersey that reach the same result. They basically are the same as California law. There's no state that's better than California law, more protective of their customers. And that's certainly not their argument either. Their argument is that they should be able to enforce the class action ban and that it should be possible to enforce a class action ban in 30 of the states or 20 of the states or something like that, that there's going to be a bunch of states out there in which people will have no remedy whatsoever. California courts have repeatedly said that in California's judgment, no state has an interest in having its workers or its customers treated badly by a California company. Now, if Montana had laws that were going to be more favorable than California to customers, then there could be an argument. But when you say treated badly, you're dealing with the underlying merits of this dispute. Yeah. I'm saying that here there's allegations in this case are that people were cheated. It's essentially a bait and switch that violates the Deceptive Trade Practice Act of California, in this case called the Uniform Competition Law and the Consumer Legal Remedies Act. When those core consumer protection remedial statutes are violated and people in other states are going to be paying a bunch of money that they shouldn't have been paying because they were misled, they were told basically this was a sale, and then later it turns out that there's a lease. And what California law recognizes is if you can ban class actions, that's the end of it. It's exculpatory. People are simply not, except for a tiny number of people, you can cheat a million people and maybe 20 minnows will slip through the net and everyone else is going to get nothing. The class action ban stands up. And what California law is saying is that California has an interest in making sure that it has a compelling interest in making sure its corporate citizens don't cheat people elsewhere, and that other states don't have an interest in having their people cheated by California. I guess I'm sort of confused because it's looked to me like the California courts follow the restatement and they make the exception based on whether it falls within the exception in Restatement 187. And I didn't see any general overwhelming principle that regardless of the restatement, we're going to uphold or we're going to enforce California law regardless of what's in another state. I'm very much arguing the restatement test. The restatement test says that where California has a fundamental policy and that where California's interests are greater than other states, then it applies. California does not apply the Section 188 test that was involved in the Detweiler case. And also I want to say about the Detweiler case since so much was made of that in the briefs. In that unpublished decision, we went back and got the briefs, and there are a host of Washington State cases that are very similar to the Diamond Multimedia case that talk about Washington having an interest in other states. None of them were cited in this court. That case was decided based on petition for mandamus, very short pleadings, and it really is very different. But, Your Honor, I am arguing that this court should take California law that's well-established in other areas and where there's no law yet in California applying under state law, applying Section 187 to this setting, a California company cheating people in other states, and a choice of law provision which would make that cheating of people in other states possible. That issue has never been faced by California. But under California law that we do know from a variety of other settings, we win the Section 187 test. I think that this court should find that California has a fundamental interest. Fundamental policy, pardon me. Find a fundamental policy. I don't have a case that uses the phrase fundamental policy, but I have a case from the California Supreme Court that says compelling interest. That's pretty close. That's pretty close. I think I should win on that. And then secondly, which state has a bigger interest, California or the other state? And I have a bunch of cases where California courts have said that people in other states do not have an interest in having their citizens cheated by California companies. So their statement has two tests. I need to win fundamental policy, and I need to win that California has a greater interest, and I think that there's a lot of California law in other contexts that looked at fairly applies to this setting. And there's no conflict between, yes, I've been in other cases in which I've said people in this state are being cheated by a company someplace else. And, yes, the state, the law of this state applies. California protects its own consumers. That's true. I agree with her. I don't disagree with the plaintiff's bar in saying that. But California has a second, a separate policy. In addition to protecting its consumers, it wants to protect people in the rest of the country from being cheated by California companies. They're two separate policies. They are not inconsistent. There's no reason they cannot both apply. Time's up. Thank you. Thank you. Are there any questions of the panel? All right. You have five seconds if you didn't use it. They are asking you to undermine and contravene the California Supreme Court in Washington Mutual. Detweiler said, in contrast to what you've just heard, to the contrary, courts have invalidated choice of law provisions selecting other states in favor of the law of the state in which the consumer resides. And that's what the parties have agreed to here. Thank you. The case just argued is submitted for decision. That concludes the Court's calendar for this morning. And the Court stands adjourned. All rise. The Court is adjourned.
judges: Siler, Schroeder, Ikuta